**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 05-367 L
into which have been consolidated Nos. 05-484 L, 05-537 L, 05-1082 L, 05-1083 L, 05-1173 L, and 05-1175 L

(E-filed: June 19, 2006)

| | | |
|---|---|---|
| GERALD E. ROTH, et. al., | ) | |
| Plaintiffs, | ) | Honorable Emily C. Hewitt |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

KELLE S. ACOCK
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0428
Fax: 202-305-0506
Email: kelle.acock@usdoj.gov

Of Counsel:

MARY RAIVEL
ROSLYN TOBE
Navy Litigation Office
Washington Navy Yard, DC 20374

Dated: June 19, 2006

**TABLE OF CONTENTS**

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS . . . . . 1

STATEMENT OF UNCONTROVERTED FACTS . . . . . 3

ARGUMENT . . . . . 5

I. Plaintiffs Have Not Satisfied Their Burden to Establish Subject Matter Jurisdiction . . . . . 5

A. Plaintiffs' takings claims, whether temporary or permanent, accrued in 1989 . . . . . 5

B. The Dickinson Stabilization Doctrine Does Not Save Plaintiffs' Time-Barred Taking Claims . . . . . 9

C. The Doctrine of Equitable Tolling Does Not Apply to Plaintiffs' Takings Claims . . . . . 14

II. Plaintiffs Comvets, Ross, and Paulsen Cannot Prove Ownership of a Compensable Property Interest . . . . . 16

CONCLUSION . . . . . 17

## TABLE OF AUTHORITIES

### CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . 5

Applegate v. United States,
25 F.3d 1579 (Fed. Cir. 1994) . . . . . 10, 12, 13

Art Center School v. United States,
136 Ct. Cl. 218, 142 F. Supp. 916 (1956) . . . . . 7

Banks v. United States,
314 F.3d 1304 (Fed. Cir. 2003) . . . . . 9, 10

Barney v. United States,
57 Fed. Cl. 76 (2003) . . . . . 14

Boling v. United States,
220 F.3d 1365 (Fed. Cir. 2000), cert denied, 540 U.S. 985 (2003) . . . . . 9, 10

Bond v. United States,
47 Fed. Cl. 641 (2000) . . . . . 5

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983) . . . . . 5

Caldwell v. United States,
391 F.3d 1226 (Fed. Cir. 2004) . . . . . 6

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . 5

Cienega Gardens, et al. v. United States,
67 Fed.Cl. 434 (2005) . . . . . 5, 6

Creppel v. United States,
41 F.3d 627 (Fed. Cir. 1994) . . . . . 6

DuMarce v. Scarlett,
446 F.3d 1294 (Fed. Cir. 2006) . . . . . 14

Fallini v. United States,
56 F.3d 1378 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996) . . . . . . . . . . . . . . 7, 11

Ferreiro v. United States,
350 F.3d 1318 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Figuera v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hendler v. United States,
952 F.2d 1364 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hilkovsky v. United States,
205 Cl. Ct. 460, 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hopland Band of Pomo Indians v. United States,
855 F.2d 1575 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Kemp v. United States,
65 Fed.Cl. 818 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 12, 13

LaMear v. United States,
9 Cl. Ct. 562, aff'd, 809 F.2d 789 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) . . . . 12, 14

Martinez v. United States,
48 Fed. Cl. 851 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pixton v. B & B Plastics, Inc.,
291 F.3d 1324 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Reed Island-MLC v. United States,
67 Fed. Cl. 27 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Reynolds v. Army & Air Force Exchange Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Total Medical Management, Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997) . . . . . . . . . . 15

United States v. Dickinson,
331 U.S. 745 (1947) . . . . . . . . . . 9, 10

United States v. Dow,
357 U.S. 17 (1958) . . . . . . . . . . 6, 10

Urban Data Sys., Inc. v. United States,
699 F.2d 1147 (Fed. Cir. 1983) . . . . . . . . . . 15

Welcker v. United States,
752 F.2d 1577 (Fed. Cir. 1985) . . . . . . . . . . 12, 13

Wyatt v. United States,
271 F.3d 1090 (Fed. Cir. 2001) . . . . . . . . . . 16

**STATUTES**

28 U.S.C. § 2501 . . . . . . . . . . 1

Military Lands Withdrawal Act of 1986,
Pub. L. No. 106-65 §§ 3011, 113 Stat. 512 (October 5, 1999) . . . . . . . . . . 1, 4, 8

**RULES**

RCFC 12(b)(1) . . . . . . . . . . 1
RCFC 12(b)(6) . . . . . . . . . . 1

**REGULATIONS**

54 Fed. Reg. 51326 (Dec. 14, 1989) . . . . . . . . . . 3, 4
56 Fed. Reg. 4074 (Feb. 1, 1991) . . . . . . . . . . 3, 4
65 Fed. Reg. 59867 (Oct. 6, 2000) . . . . . . . . . . 4

## LIST OF EXHIBITS

| **Exhibit Number** | **Exhibit Description** |
| --- | --- |
| Exhibit A | Excerpts from the Navy's May 1998 Final Environmental Impact Statement (EIS) |
| Exhibit B | Declaration of Beverly Freitas |
| Exhibit C | Declaration of Antoinette Perez |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant has moved to dismiss each complaint in this consolidated action pursuant to RCFC 12(b)(1) for lack of jurisdiction on the ground that plaintiffs' claims against the United States are barred by the applicable six-year statute of limitations, 28 U.S.C. § 2501. Defendant also moved pursuant to RCFC 12(b)(6), to dismiss the claims of Plaintiffs Thomas E. Hoey, Jimmy Hicks, and Edward Sexton, doing business as Comvets Mining ("Comvets")[1], Catherine C. Paulsen, and Janet C. Ross for failure to state a claim upon which relief can be granted because these plaintiffs cannot satisfy their burden to prove they owned a compensable property interest on the date of the alleged taking.

Plaintiffs oppose defendant's motion contending that their claims did not accrue until the effective date of the National Defense Authorization Act for Fiscal Year 2000, also referred to as "The Military Lands Withdrawal Act," ("MLWA"), Pub. L. No. 106-65, §§ 3011 - 3018, 113 Stat. 512 (October 5, 1999). That date, according to plaintiffs, represents when their claims "stabilized" because the withdrawal of public lands surrounding the patented lands at issue became known and permanent. Plaintiffs also argue accrual of their takings claims should be tolled because, after the enactment of the MLWA, the United States Department of the Navy ("Navy") indicated that it would appraise and compensate plaintiffs for their property.

Plaintiffs Comvets and George D. Duffy each set forth an additional argument. Comvets argues its claim did not accrue in 1989 because the Navy informed Hoey that it was working with the United States Department of the Interior, Bureau of Land Management ("BLM") to study an alternative access route. Plaintiff Duffy alleges that accrual of his cause of action should be

---

[1]In their opposition, plaintiffs refer to evidence presented by Thomas E. Hoey to support the claim set forth in this complaint.

tolled because the Navy specifically advised Duffy that no statute of limitations was running on his claim for just compensation.

Plaintiffs' accrual theories must be rejected. First, plaintiffs' takings claims, whether temporary or permanent, accrued in 1989, more than fifteen years prior to the filing of plaintiffs' complaints in this Court. The uncontroverted facts establish that notice of the closure of public lands, which surrounded the patented lands at issue and included a road leading to all patented lands at issue, was published in the Federal Register in 1989 and 1991 and appropriate warning signs were erected in 1989 and 1991, thereby providing plaintiffs with notice of the closure. Second, even assuming plaintiffs' argument is correct and their claims "stabilized" and therefore accrued on the effective date of the MLWA, the claims of Plaintiffs Janet C. Ross, Catherine Paulsen, George D. Duffy, and Renwick P. Russel would still be time-barred because the MLWA became effective on October 5, 1999, more than six years prior to the date when these four plaintiffs filed their complaints on October 12, 2005[2], November 3, 2005, and November 4, 2005, respectively. Third, the Navy's consideration of studying the feasibility of an alternative access route and attempt to appraise and purchase the lands at issue does not prevent the accrual of plaintiffs' takings claims or otherwise toll the statute of limitations. Fourth, plaintiffs fail to set forth any credible evidence that the doctrine of equitable tolling is applicable to their claims.

In response to defendant's motion to dismiss for failure to state a claim, Plaintiffs Comvets, Ross, and Paulsen submitted affidavits stating they are the undisputed owners of the patented lands at issue. This evidence, however, is insufficient to establish that plaintiffs were the undisputed owners of the patented lands at issue at the time of the alleged taking.

---

[2] The complaints of Ross and Paulsen were each filed on October 12, 2005.

## STATEMENT OF UNCONTROVERTED FACTS

Although many of the facts set forth below were included in defendant's opening memorandum, defendant provides the following statement of uncontroverted facts material to its motion. See Deft. Mot., pp. 4-7.

In 1989, at the request of the Navy, BLM closed public lands surrounding the patented lands at issue, which included a road leading to all of the patented lands at issue. Deft. Mot., p. 3; Pla. Opp., pp. 8, 15. Notice of the closure was published in the Federal Register on December 14, 1989, and February 1, 1991. 54 Fed. Reg. 51326 (Dec. 14, 1989); 56 Fed. Reg. 4074 (Feb 1, 1991); see Deft. Mot., Exhibits C, D. The published notices provided that public lands adjacent to the Bravo-16, Bravo 17, and Bravo-19 bombing ranges of Naval Air Station ("NAS") Fallon were "closed to the public until further notice" to ensure public safety because of the possible presence of live ordnance from adjacent ranges. 54 Fed. Reg. 51326, Deft. Mot., Ex. C, p. US00008; 56 Fed. Reg. 4074, Deft. Mot., Ex. D, p. US00011 (stating lands adjacent to the three bombing ranges were "closed to all public access to ensure public safety, until further notice"). Each published notice provided a detailed description of the lands affected by the closure. The descriptions provided in the December 1989 and February 1991 notices specifically included public lands surrounding all of the patented lands at issue, except the patented land over which Ross asserts ownership. 54 Fed. Reg. 51326, Deft. Mot., Ex. C., p. US00009-10 (closing all public lands in sections 17 and 20, and the western portion of the western half of sections 16 and 21, Township 16 North, Range 34 East); 56 Fed. Reg. 4074, Deft. Mot., Ex. D., p. US00014 (restating the closure of all public lands in sections 17 and 20, and the western half of sections 16 and 21, Township 16 North, Range 34 East). Public lands located in the eastern half of section

16, Township 16 North, Range 34 East were not closed. 54 Fed. Reg. 51326, Deft. Mot., Ex. C., p. US00009-10; 56 Fed Reg. 4074, Deft. Mot., Ex. D., p. US00014.

The Secretary of the Navy informed Senator Harry Reid by letter dated December 29, 1989, that warning signs were erected regarding the closure. Deft. Mot., Ex. F., p. US00025 ("BLM has temporarily closed the affected lands and has erected appropriate warning signs."). On October 16, 1991, Navy completed posting signs indicating the public lands adjacent to the B-16, B-17, and B-19 bombing ranges were closed for public safety. Deft. Mot., Ex. E., p. US00016. The signs stated "AREA CLOSED - The public lands behind this sign are closed for public safety - NO TRESPASSING - For further information call NAS Fallon (702) 426-2405 43 CFR 8364 NRS 207.200." Deft. Mot., Ex. E., p. US00020-21. A sign was also posted on the road leading to the patented lands at issue, which stated "WARNING - Restricted Area - Keep Out - It is unlawful to enter this area without permission of the commanding officer, NAS Fallon, Nevada . . ." Pla. Opp., Ex. 3.

On October 5, 1999, Congress passed the MLWA, which replaced the closure orders and notices published in the Federal Register. See Pub. L. No. 106-65, §§ 3011, *et. seq*. Section 3011 of the MLWA withdrew approximately 204,953 acres including land established at the B-16, B-17, B-19, and B-20 ranges at NAS Fallon. Pub. L. No. 106-65, §§ 3011(a)(1) - (a)(2), §§ 3011(a)(1)(C). The Act, however, did not withdraw public lands located in the eastern half of section 16 of Township 16 North, Range 34 East. 65 Fed. Reg. 59867 (October 6, 2000), Deft. Mot., Ex. N, p. US00084-85. The Act provided further that the withdrawal of lands became effective on the date of enactment of the MLWA. Pub. L. No. 106-65, § 3015(b).

## ARGUMENT

### I. Plaintiffs Have Not Satisfied Their Burden to Establish Subject Matter Jurisdiction

Plaintiffs bear the burden to establish subject matter jurisdiction by a preponderance of the evidence. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Bond v. United States, 47 Fed. Cl. 641, 647 (2000) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to the plaintiffs. Figuera v. United States, 57 Fed. Cl. 488, 492 (2003) (citing Sheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002). However, if a motion to dismiss challenges the truth of jurisdictional facts alleged in the complaints, the allegations in the complaints are not controlling, and the court may consider relevant evidence in order to resolve the factual dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint."); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993); Reynolds v. Army & Air Force Exchange Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). For the following reasons, plaintiffs have not, and cannot, satisfy their jurisdictional burden.

#### A. Plaintiffs' takings claims, whether temporary or permanent, accrued in 1989

Plaintiffs, relying on non-binding precedent set forth in Cienega Gardens, et al. v. United States, 67 Fed.Cl. 434 (2005), argue that the statute of limitations for a temporary taking does not

accrue until the end of the temporary taking. Pl. Opp., p. 6, 19, 23-24; see Cienega Gardens, 67 Fed.Cl. at 462 (citing Creppel v. United States, 41 F.3d 627, 631-32 (Fed. Cir. 1994) and Reed Island-MLC v. United States, 67 Fed. Cl. 27, 34-36 (2005)). Plaintiffs admit they were denied access to the patented lands at issue in 1989, but claim that this exclusion was temporary and the withdrawal of the public lands at issue did not become permanent until the effective date of the MLWA. Pl. Opp., p. 6, 16, 23-24. Therefore, according to plaintiffs, their cause of action did not accrue until the date the MLWA became effective. Plaintiffs' position is incorrect as a matter of law and must be rejected.

Plaintiffs allege a physical taking of patented lands. See Compls. ¶¶ 3, 6-7 (asserting defendant permanently prevented access to plaintiffs' mining claims). As this Court has stated, "the statute of limitations" for a physical taking "begins to run when the United States comes into physical possession of the plaintiff's land." Kemp v. United States, 65 Fed.Cl. 818, 822 (2005) (citing United States v. Dow, 357 U.S. 17, 21 (1958)). Moreover, permanent physical occupation ". . . does not require that in every instance the occupation be exclusive, or continuous and uninterrupted." Kemp, 65 Fed.Cl. at 822 (quoting Hendler v. United States, 952 F.2d 1364, 1377-79 (Fed. Cir. 1991)). Further, "[W]hether a physical taking is permanent or temporary is irrelevant to the application of the statute of limitations because the accrual date is the same for both." Id. at 822-23 (citing Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)).

As applied to the present case, plaintiffs' physical takings claims, whether temporary or permanent, accrued in 1989, more than fifteen years prior to the filing of the first complaint in this consolidated action on March 14, 2005. In 1989 and 1991, notice was published in the Federal Register and signs were posted clearly indicating the public lands surrounding the

patented lands, which included the road leading to the patented lands at issue, were not accessible. At that point, all events which fix the government's alleged liability had occurred, and plaintiffs were aware, or should have been aware, of their existence. See Hopland Band of Pomo Indians v. United States, 855 F.2d 1575, 1577 (Fed. Cir. 1988); see also LaMear v. United States, 9 Cl. Ct. 562, 575, aff'd, 809 F.2d 789 (Fed. Cir. 1986) (the statute begins to run when a "'plaintiff discovers, or by reasonable diligence could have discovered the basis of the lawsuit.'" (citation omitted)); Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996) (in determining when a claim has accrued, the court applies an objective standard). The material facts supporting accrual in 1989 are undisputed.

It is uncontroverted that public lands surrounding the patented lands at issue, which included a road leading to all of the patented lands at issue, were closed in 1989. Pl. Opp., pp. 8-9, Pl. Opp., Ex. 3. It is also uncontroverted that notice of the closure was published in the Federal Register in 1989 and 1991, providing plaintiffs with notice of the closure more than fifteen years prior to the filing of the first complaint in this consolidated action. 54 Fed. Reg. 51326; see also Art Center School v. United States, 136 Ct. Cl. 218, 227, 142 F. Supp. 916, 918-19, 921 (1956) (publication in Federal Register served as constructive notice). Moreover, it is undisputed that signs were posted in 1989 and 1991 clearly indicating public lands surrounding the patented lands at issue and the road leading to the patented lands at issue were not accessible. Deft. Mot., Ex. E., p. US00016, US00020-21; Deft. Mot., Ex., F., p. US00025; Pl. Opp., p. 9. Indeed, Plaintiff Comvets admits knowledge of the sign posted on the road leading to the patented lands at issue. Pl. Opp., pp. 8-9; Pl. Opp., Ex. 3. Therefore, in 1989, more than fifteen years before plaintiffs filed their complaints in this Court, the events which plaintiffs allege fixed

the government's liability had occurred, and plaintiffs were entitled to institute an action. Accordingly, each complaint in this consolidated action must be dismissed in its entirety.

Even assuming *arguendo* that plaintiffs position is correct and the statute of limitations did not begin to run until the effective date of the MLWA, the claims of Plaintiffs Ross, Paulsen, Duffy, and Russel would still be time-barred. Plaintiffs erroneously state that the MLWA became effective on November 6, 1999, and incorrectly refer to the MLWA's provision regarding termination of the withdrawal as withdrawing the public lands "for a period of twenty-five years which is to end twenty-five years after November 6, 1999." Pl. Opp., pp. 6, 16. The provision plaintiffs cite provides that the withdrawal of lands "shall terminate 25 years after November 6, 2001 . . . except for the withdrawals provided for under subsections (a) and (b) of section 3011 which shall terminate 20 years after November 6, 2001." Pub. L. No. 106-65, § 3015(a) (emphasis added). The following subsection, "Commencement Date for Certain Lands," specifically provides, "[A]s to lands withdrawn for military purposes by section 3011, but not withdrawn for military purposes by section 1 of the Military Lands Withdrawal Act of 1986 (Public Law 99-606),[3] the withdrawal of such lands shall become effective on the date of the enactment of this Act." Pub. L. No. 106-65, § 3015(b) (emphasis added). The Act was enacted on October 5, 1999. See Pub. L. No. 106-65, § 3011, *et seq*. Accordingly, the MLWA replaced the 1989 and 1991 closure orders and became effective on October 5, 1999, more than six years before these four plaintiffs filed their complaints between October 12, 2005 and November 4,

[3]Section 1 of Public Law 99-606, enacted on November 6, 1986, withdrew certain public lands in Churchill County, Nevada adjacent to the Bravo-20 Bombing Range. Pub. L. No. 99-606, §§ Section 1(a), (a)(2), 100 Stat 3457. The withdrawal terminated "15 years after the date of enactment of [the] Act." Pub. L. No. 99-606, § Section 5(a). Thus, the withdrawal expired on November 6, 2001. See also Pub. L. No. 106-65, § 3013.

2005. See Kemp, 65 Fed.Cl. at 822 ("When the taking is effected by legislation, the taking accrues on the enactment of the legislation . . . ."). Therefore, even pursuant to plaintiffs' argument, these four complaints must be dismissed in their entirety.

**B. The Dickinson Stabilization Doctrine Does Not Save Plaintiffs' Time-Barred Takings Claims**

Plaintiffs seek to avoid the six-year statute of limitations in this case by invoking the Dickinson stabilization doctrine. See United States v. Dickinson, 331 U.S. 745, 749 (1947) (plaintiff's takings claim resulting from a "continuous process of physical events" did not accrue until the flooding stabilized and damages could be certain). Although it is unclear from their opposition, plaintiffs seem to argue that their claim did not stabilize until the effective date of the MLWA, when the temporary taking, according to plaintiffs, ceased and the alleged taking became permanent. Pl. Opp., p. 19. Plaintiffs' attempt to invoke Dickinson to support their position is misplaced.

As set forth above, plaintiffs' cause of action for a physical taking, whether temporary or permanent, accrued in 1989, when the government first denied plaintiffs access to the patented lands at issue. Additionally, the concept of stabilization - which applies "where the government leaves the taking of property to a gradual physical process" - occurs "'"when it becomes clear that the gradual physical process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined.'" Banks v. United States, 314 F.3d 1304, 1308 (Fed. Cir. 2003) (quoting Boling v. United States, 220 F.3d 1365, 1370-71 (Fed. Cir. 2000)), cert denied, 540 U.S. 985 (2003). For the following reasons, stabilization is not applicable to plaintiffs' claims.

In Banks, plaintiffs, owning land along a shoreline, claimed a taking based on the Army Corps of Engineers construction and maintenance of jetties that allegedly altered the supply of sand to a lakebed. Banks, 314 F.3d at 1306. The government conceded that its actions exacerbated naturally occurring erosion and took actions to mitigate this erosion over a period exceeding 15 years. Id. 314 F.3d at 1306-07. In the late 1990s, the government issued a report on its mitigation efforts that noted the "irreversible and potentially permanent nature of the erosion" in question. Id. at 1307. Applying the Dickinson stabilization doctrine to these facts, as modified by Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994), the Federal Circuit explained that the "'critical element that delayed stabilization in Applegate [is] the justifiable uncertainty about the permanence of the taking.'" Banks, 314 F.3d at 1309 (quoting Boling, 220 F.3d at 1372). The court further explained that "the question is whether the 'predictability [and permanence] of the extent of damage to the [plaintiffs'] land' was made justifiably uncertain by the Corps' mitigation efforts." Id. at 1309. The Federal Circuit held that, with mitigation efforts ongoing, the accrual of plaintiffs' takings claims remained uncertain until the government's reports in the late 1990s "collectively indicated that erosion was permanent and irreversible." Id. at 1310.

Unlike Dickinson and Banks, the undisputed facts in the present case do not involve a physical taking caused by a "gradual physical process" through flooding or erosion. See Kemp, 65 Fed.Cl. at 825 ("the Supreme Court interpreted *Dickinson* as having a limited holding applying only to flooding") (citing Dow, 357 U.S. at 27, 78 S.Ct. 1039)). Rather, plaintiffs' claims here involve a single government action - the closure of public lands surrounding the patented lands at issue - which denied plaintiffs access to their mining claims. Denial of access

forms the sole basis for plaintiffs' takings claims. Compls. ¶¶ 7-8. It is uncontroverted that plaintiffs were denied access in 1989, and notice of the closure was provided in the Federal Register and through the posting of signs. As such, plaintiffs cannot argue that their claims were justifiably uncertain in 1989.

Plaintiff Comvets' argument regarding tolling is also unconvincing. Comvets asserts that the statute of limitations on its claims should be tolled because the Navy informed one of Comvets' principals, Thomas Hoey, that it was considering studying an alternate route of access to plaintiffs' property.[4] Pl. Opp., pp. 9-10. First, as set forth in defendant's motion, Comvets did not own the patented lands at issue in 1989 - the undisputed year that public lands surrounding the patented lands at issue were closed. Def. Mot., p. 15, Ex. I. Comvets did not acquire its interest in the patented lands at issue until 1995, more than four years after publication of the closure in the Federal Register and posting of signs in 1989 and 1991.[5] Def. Mot., p. 15; Hoey Decl., ¶ 3. Second, the Navy's consideration of studying the feasibility of an alternative route is insufficient to be viewed as a mitigation effort because, unlike the affirmative acts taken in Banks, studying the feasibility of an alternative is not equivalent to an affirmative action, such as building the road, to reverse the denial of access. Even if consideration of studying the feasibility

---

[4]Notably, the remaining six plaintiffs do not set forth this argument or present evidence supporting this assertion.

[5]Comvets acknowledges a sign was posted on the road leading to its patented lands unambiguously stating "Restricted area - Keep out . . .," but claims the sign "only gave notice of a temporary closure" and was "not understood by affiant to have barred visits to or utilization of the subject mining claims . . . ." Hoey Decl., ¶ 6. Comvets subjective interpretation is not persuasive, nor is it relevant for statute of limitations purposes. See Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996) (in determining when a claim has accrued, the court applies an objective standard).

of an alternative route could be viewed as a "mitigation effort," this consideration alone, without more continuous actions, is insufficient to render the extent of Comvets claim "'inherently unknowable at the accrual date.'" See Martinez v. United States, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (citing Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)); see also Kemp, 65 Fed.Cl. at 825 ("original act permitting the public access," not the crossing of successive pedestrians, considered as the compensable taking). Moreover, Comvets' claim would still be time-barred because, in May 1998, more than six years before Comvets filed its complaint in this Court, the Navy published its Final Environmental Impact Statement ("EIS") providing notice that the only "mitigation" effort available included exploring "means to compensate holders of impacted mining patents . . . ." Ex. A, p. US00102-103; see also Pl. Opp., p. 10.

Plaintiffs reliance on cases such as Applegate is also misplaced. Plaintiffs attempt to toll the statute of limitations based on a letter dated December 10, 2001, indicating the Navy would be appraising and offering compensation to plaintiffs subject to the availability of funds. Pl. Opp., pp. 6, 14. The present case, however, is distinguishable from Applegate and other similar cases in which the statute of limitations has been tolled under Dickinson.

In Applegate, plaintiffs claimed a taking of beachfront property. Applegate, 25 F.3d at 1580. The government acknowledged that its actions (the construction of a deep-water harbor with jetties protecting the harbor entrance) were causing the erosion of shoreline in the area. Id. In 1962, the government obtained authorization to construct a sand transfer plant to mitigate the effects of its harbor project. Id. Although the measures were repeatedly delayed, the government renewed its promise to construct the plant as late as 1998. Id. at 1582. The Federal Circuit held

that the government's promises to construct the plant and "restore the littoral flow destroyed the predictability of the extent of the damages to the land." Id. at 1583. Based on the gradual nature of the erosion in question, plus the promises of a sand transfer plant to mitigate the effect of the government's action, the Applegate court held that the accrual of plaintiffs' takings claims was uncertain and that those claims were not time-barred. Id. at 1583-84.

The undisputed facts of this case are not analogous to Applegate. Despite the allegation in their complaints that the alleged taking became permanent by enactment of the MLWA, plaintiffs rely on communications after the enactment of the MLWA on October 5, 1999, to support their tolling argument. Compls. ¶¶ 3, 6 (alleging that the MLWA permanently prevented access to the mining claims) (emphasis added); see also Pl. Opp., p. 15 (allegations in the complaints "are based on the known and fixed taking caused solely by the imposition" of the MLWA). The December 10, 2001, letters and any subsequent communications with plaintiffs regarding compensation occurred more than two years after the effective date of the MLWA - the date on which plaintiffs argue the alleged taking was known and permanent. As such, plaintiffs cannot now rely on correspondence between the Navy and plaintiffs occurring after that date to support their argument that the statute of limitations should be tolled.

Moreover, unlike the plaintiffs in Applegate, plaintiffs' argument in this case regarding the December 10th letter does not allege uncertainty regarding the permanence of the alleged taking. Rather, plaintiffs' argument regarding the December 10th letters confuses claim accrual with possible compensation for their claims. After passage of the MLWA, plaintiffs do not complain of an additional denial of a property right, or allege that the government engaged in mitigation efforts that would reverse the cause of the alleged taking, making the extent of the

alleged taking uncertain. Instead, plaintiffs incorrectly argue that an indication that compensation could be forthcoming is sufficient to equitably toll or suspend the statute of limitations. See Kemp, 65 Fed.Cl. at 826 (citing Hilkovsky v. United States, 205 Cl. Ct. 460, 504, F.2d 1112, 1115 (1974) (complaining only of the length of time to buy, trade, or condemn lands is insufficient to establish a taking). For these reasons, the statute of limitations should not be tolled, and each complaint in this consolidated action must be dismissed in its entirety.

### C. The Doctrine of Equitable Tolling Does Not Apply to Plaintiffs' Takings Claims

There is no evidence in the present case to justify applying the doctrine of equitable tolling to plaintiffs' claims. "[E]quitable tolling against the federal government is a narrow doctrine," which is applied sparingly. DuMarce v. Scarlett, 446 F.3d 1294, 1304-05 (Fed. Cir. 2006). "To toll a statute of limitations, a claimant either must show that the defendant has concealed its acts with the result that the plaintiff was unaware of their existence or that the injury was inherently unknowable." Barney v. United States, 57 Fed. Cl. 76, 87-88 (2003); see also Martinez v. United States, 333 F.3d at 1319.

Plaintiffs' complaints contain no allegations that the defendant engaged in fraud, misconduct, or acts of concealment that persuaded plaintiffs not to file their complaints at an earlier date. However, in their opposition, plaintiffs again rely on the December 10th letter and generally assert that the doctrine of equitable tolling applies to their claims. Pl. Opp., p 19-20, 25. For the reasons set forth above, equitable tolling is not applicable to plaintiffs' claims based on this argument.

No plaintiff, except Duffy, asserts an argument relevant to equitable tolling. Duffy claims Beverly Freitas "specifically advised that there was no statute of limitations running of his claim

for just compensation," and that Antoinette Perez advised "that there was no time limit on [his] claim and that the Navy must make an offer before going into eminent domain." Pl. Opp., p. 14-15; Pl. Opp., Ex. 19.[6]

Duffy's allegations are without merit. First, Duffy fails to satisfy his jurisdictional burden with competent evidence, and he fails to provide dates, or any other context, for his alleged conversations with Freitas and Perez. Second, Duffy does not claim that the statements allegedly made caused him not to file his complaint earlier. Moreover, Duffy does not allege any conduct by the government to conceal information making his injury "inherently unknowable." Third, as set forth in their declarations, Freitas and Perez have never spoken to Duffy regarding the statute of limitations. Freitas explains that she spoke to Duffy on one occasion, but never discussed statute of limitations with Duffy. Declaration of Beverly Freitas ("Freitas Decl."), attached as Exhibit B, ¶ 2. Perez, currently working as a Realty Specialist, was not even a civilian Navy employee until August 8, 2005. Declaration of Antoinette Perez ("Perez Decl."), attached as Exhibit C, ¶ 2. Immediately prior to her current position, Perez was on active duty and stationed in San Diego where she served as a Flag Writer/Personal Executive Assistant to Rear Admiral Betancourt from February 2002 through July 2005. Perez Decl., ¶ 2. During her service and employment with the Navy, Perez has never spoken to George Duffy. Perez Decl., ¶¶ 2, 4. Even assuming Duffy's allegations are true, Freitas and Perez do not have authority to make such representations on behalf of the United States or waive this court's jurisdiction. See Total Medical Management, Inc. v. United States, 104 F.3d 1314, 1320-21 (Fed. Cir. 1997) (citing

---

[6]Since the statute of limitations is jurisdictional, such statements could never result in the statute of limitations ceasing to run.

Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983)) (government "is not bound by its agents acting beyond their authority and contrary to regulation."); see also Martinez v. United States, 48 Fed. Cl. 851, 857 (2001) ("Because the statute of limitations affects this court's subject matter jurisdiction--rather than being an affirmative defense--the requirement is strictly construed and under no circumstances may it be waived by the court."). For these reasons, the doctrine of equitable tolling is not applicable to plaintiffs' claims.[7]

## II. Plaintiffs Comvets, Ross, and Paulsen Cannot Prove Ownership of a Compensable Property Interest

As set forth in defendant's motion, Plaintiffs Comvets, Ross, and Paulsen cannot establish undisputed ownership of the patented lands over which they assert ownership at the time the alleged taking occurred. Deft. Mot., pp. 14-16. It is undisputed Comvets and Ross did not own the patented lands over which they assert ownership in 1989. Deft. Mot., p. 15, Ex. I; Hoey Decl., ¶ 3; Declaration of Janet Ross ("Ross Decl."), ¶ 2(D), Pl. Opp. Ex. 23(D); see Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation."). To survive defendant's motion to dismiss, Paulsen submits her declaration stating she has been the undisputed owner of the patented lands over which she asserts ownership since 1966, but fails to submit any documentation to support her ownership claim. Declaration of Catherine Paulsen ("Paulsen Decl."), Pl. Opp. Ex. 22, ¶ 3. Therefore, aside from Paulsen's conclusory allegation,

[7]Plaintiffs request discovery regarding jurisdiction. Pl. Opp., pp. 23, 26. Discovery should not be opened in this case because the uncontroverted facts establish plaintiffs' claims accrued in 1989, and there is no credible evidence to support tolling of the limitations period.

Additionally, plaintiffs procedural due process arguments are not relevant to the jurisdiction. Pl. Opp., pp. 21-23.

there is no record of her ownership. For these reasons, Plaintiffs Comvets, Ross, and Paulsen cannot prove they owned a compensable property interest on the date of the alleged taking, and the complaints of these three plaintiffs must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant its motion to dismiss, and dismiss each complaint in this consolidated action in its entirety for lack of jurisdiction and failure to state a claim.

DATED: June 19, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

s/ Kelle S. Acock

KELLE S. ACOCK
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0428
Fax: 202-305-0267
Email: kelle.acock@usdoj.gov

Of Counsel:

Mary Raivel
Roslyn Tobe
Navy Litigation Office
Washington Navy Yard, DC 20374