# In the United States Court of Federal Claims

No. 05-367 L
into which have been consolidated Nos. 05-484 L, 05-537 L, 05-1082 L, 05-1083 L,
05-1173 L, and 05-1175 L

(E-Filed: September 27, 2006)

| | | |
|---|---|---|
| GERALD E. ROTH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Takings; Motion to Dismiss; |
| | ) | Patented Mining Claims; Claim |
| v. | ) | of Taking Based on Permanent |
| | ) | Denial of Access; Claims Barred |
| THE UNITED STATES, | ) | By Statute of Limitations |
| | ) | |
| Defendant. | ) | |

Glade L. Hall, Reno, Nevada, for plaintiff.

Kelle S. Acock, with whom was Sue Ellen Wooldridge, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC.  J. Page Turney and Douglas Edgecomb, Navy Litigation Office, Washington, DC, of counsel.

OPINION

HEWITT, Judge

Before the court is Defendant's Motion to Dismiss Pursuant to Rules of the Court of Federal Claims (RCFC) 12(b)(1) and 12(b)(6) and Memorandum in Support Thereof (Def.'s Mot.), Plaintiffs' Opposition to Motion to Dismiss (Pls.' Opp.) and Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss (Def.'s Reply).  For the following reasons, defendant's motion under RCFC 12(b)(1) is GRANTED.

I.      Background

Plaintiff Gerald E. Roth alleges that the United States effected a taking of his property by the Military Lands Withdrawal Act of 1999 (MLWA) for which he was not justly compensated.  Roth Complaint (Roth Compl.) ¶¶ 3-6.  Similar allegations arising under the MLWA were made by eight other individuals, Catherine Paulsen, Janet C.

Ross, George D. Duffy, Renwick P. Russel, Relf L. Hudleston, Thomas E. Hoey, Jimmy Hicks and Edward Sexton, and consolidated into the above-captioned case. See Order of Dec. 15, 2005; Order of Dec. 30, 2005; Def.'s Mot. 1.[1]  The parties refer to the claims filed by plaintiffs Hoey, Hicks, and Sexton as "Comvets" because those individuals conducted business together as Comvets Mining.  Def.'s Mot. 1.  The court sometimes refers collectively to the complaints filed by the parties (with the exception of Ms. Ross's complaint) as the Complaints.

Plaintiffs assert ownership over patented mining claims in the Fairview Mining District of Churchill County, Nevada.  Pls.' Opp. 8; Def.'s Mot. 3.  They claim that defendant's permanent denial of access to their patented mining lands constitutes a taking under the Fifth Amendment.  Roth. Compl. ¶ 6; see also Def.'s Mot. 5.  With the exception of Ms. Ross, all of the plaintiffs claim ownership of lands that fall under the MLWA's jurisdiction.  Pls.' Opp. 6.  Ms. Ross, on the other hand, claims that the MLWA took away "all reasonable access to her patented mining claim."[2]  Id. at 7.

---

[1]Gerald E. Roth (case no. 05-367L) filed his claim on March 14, 2005.  Roth Compl. 1.  Thomas E. Hoey, Jimmy Hicks, and Edward Sexton (case no. 05-484L) filed a claim collectively as "Comvets" on April 20, 2005.  Hoey Compl. 1.  Catherine Paulsen (case no. 05-1082L) and Janet C. Ross (case no. 05-1083L) filed their respective claims on October 12, 2005.  Paulsen Compl. 1; Ross Compl. 1.  George D. Duffy (case no. 05-1173L) filed his claim on November 3, 2005.  Duffy Compl. 1.  Renwick P. Russel (05-1175L) filed his claim on November 4, 2005.  Russel Compl. 1.  Relf L. Hudleston (case no. 05-537L) filed his claim on May 11, 2005.  Hudleston Compl. 1.  The court consolidated the complaints by Paulsen, Ross, Duffy, and Russel into case no. 05-367L on December 15, 2005.  Orders of Dec. 15, 2005.  The court also consolidated the complaints by Hoey, Hicks, Sexton, and Hudleston into case no. 05-367L on December 30, 2005.  Order of Dec. 30, 2005.

[2]The parties disagree over the ownership rights of plaintiffs Comvets, Paulsen, and Ross.  Defendant claims that "[i]t is undisputed Comvets and Ross did not own the patented lands over which they assert ownership in 1989."  Def.'s Reply 16.  Plaintiffs state that "[i]t is admitted by the government that Comvets owned its claim on the date relevant to this takings claim, . . . November 5, 1999."  Pls.' Opp. 26.  As to Ms. Ross, plaintiffs claim that Ms. Ross is the lawful owner of that land because she is "the surviving joint tenant pursuant to the death certificate of her joint tenant."  Id. at 25.  As to Ms. Paulsen, defendant faults plaintiffs for not offering any documentation to support Ms. Paulsen's declaration that "she has been the undisputed owner of the patented lands over which she asserts ownership since 1966."  Def.'s Reply 16.  Plaintiffs point to a letter written by the Navy that recognizes Catherine Christie as the owner and state that "Catherine Paulsen is the married name of Catherine Christie."  Pls.' Opp. 26.  Because the court dismisses the case for want of jurisdiction, the court does not address the factual disputes concerning plaintiffs' property interests.  For the purposes of its analysis, the court assumes, without deciding, that the parties each held property interests protected under the Fifth Amendment.  See U.S. Const. amend. V.

2

In 1989, pursuant to a request made by the United States Navy (Navy), the Bureau of Land Management (BLM), a division of the United States Department of Interior (Interior), "closed the public lands surrounding all of the patented lands at issue, except the patented land over which Ross asserts ownership." Def.'s Mot. 3. The Federal Register on December 14, 1989, 54 Fed. Reg. 51,326, and February 1, 1991, 56 Fed. Reg. 4,074, published notice of the closure, stating that public lands adjacent to bombing ranges of Naval Air Station Fallon were "closed to the public until further notice." Defendant presented evidence that "warning signs were erected regarding the closure" at that time. See Def.'s Mot. 4[3] (citing a letter from the Secretary of the Navy to Senator Harry Reid). Two years later, in 1991, "the Navy contracted for the creation and installation of 800 warning signs regarding the closure of public lands." Id. (citing Declaration of Larry Jones ¶ 2.)

Congress passed the MLWA on October 5, 1999. Def.'s Mot. 4. The legislation "replaced the closure orders and notices published in the Federal Register." Id. at 5 (citing Pub. L. No. 106-65, §§ 3011-3018, 113 Stat. 512). Section 3011 of the MLWA specified that "'approximately 204,953 acres of land in Churchill County, Nevada' . . . were withdrawn from public lands and reserved 'for use by the Secretary of the Navy' for training and testing." Def.'s Mot. 5 (citing §§ 3011(a)(1)-(2), 3011(a)(1)(c)). The MLWA also provided that the withdrawal of lands to be used "for military purposes by section 3011" were to become effective on date of the MLWA's enactment. § 3015(b).

Defendant has moved to dismiss each plaintiff's complaint in this consolidated action. See RCFC 12(b)(1). Defendant argues that the court lacks jurisdiction to hear plaintiffs' claims because the claims are time-barred. Def.'s Mot. 1. In the alternative, defendant moves to dismiss the claims of plaintiffs Hoey, Hicks, Sexton, Paulsen, and Ross under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Id. at 2; see also RCFC 12(b)(6).

II.     Discussion

A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

   1.     Jurisdiction

The Court of Federal Claims derives its jurisdiction from 28 U.S.C. § 1491, which states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution,

---

[3]Facts cited to the findings of only one of the parties do not appear to be in dispute.

or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). Section 2501 of title 28 of the United States Code limits the court's jurisdiction of claims to those arising no longer than six years before the complaint is filed: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000). "Section 2501 imposes a limitation on the jurisdiction of the Court such that the court lacks jurisdiction to hear time-barred claims." Kemp v. United States, 65 Fed. Cl. 818, 820 (2005) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). That limitation was "attached by Congress as a condition of the government's waiver of sovereign immunity." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988). The Court of Appeals for the Federal Circuit has directed that the six-year limitation "must be strictly construed." Id. at 1577.

    2.       Standard of Review

    a.       Rule 12(b)(1)

Rule 12(b)(1) governs dismissal of a claim for lack of subject matter jurisdiction. RCFC 12(b)(1). "When considering a motion to dismiss for lack of jurisdiction, the court assumes that all well-pleaded facts alleged in the complaint are true and draws all reasonable inferences in favor of plaintiff." Kemp, 65 Fed. Cl. at 820 (citations omitted). The burden of proof rests upon plaintiff, who must establish that the court has subject matter jurisdiction by a preponderance of the evidence. Id.; see also Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir. 1994) (citations omitted) ("The burden of establishing federal jurisdiction falls on the party invoking [it]."); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

    b.       Rule 12(b)(6)

Rule 12(b)(6) governs dismissal of a claim for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When evaluating a RCFC 12(b)(6) motion, the court must accept all material facts alleged in the complaint as true, Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991), and must draw all reasonable inferences in favor of the non-moving party, Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). Dismissal is appropriate under RCFC 12(b)(6) when "the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy." Holland v. United States, 59 Fed. Cl. 735, 738 (2004) (citation omitted).

In this case, the court does not reach defendant's arguments regarding RCFC 12(b)(6) because the court disposes of the claims by all plaintiffs under RCFC 12(b)(1).

    3.    Plaintiffs' Claims Are For Physical Takings

The Fifth Amendment to the United States Constitution declares that private property cannot be taken "for public use, without just compensation." U.S. Const. amend. V. Takings cases are divided into two categories: physical and regulatory. Yee v. City of Escondido, 503 U.S. 519, 522-23 (1992). A physical taking comprises unwanted physical occupation of private property, Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 421 (1982), whereas a regulatory taking "occurs 'when a regulatory or administrative action places such burdens on ownership of private property that essential elements of such ownership must be viewed as having been taken." Kemp, 65 Fed. Cl. at 821 (citing Hendler v. United States, 36 Fed. Cl. 574, 585 (1996), aff'd, 175 F.3d 1374 (Fed. Cir. 1999)). However, the two categories are linked inextricably because "there has rarely been a pure physical taking." Store Safe Redlands Assocs. v. United States, 35 Fed. Cl. 726, 728 (1996) (Store Safe Redlands). As this court noted in Store Safe Redlands, a pure physical taking rarely exists "because our government and its agents rarely seize or occupy property without some arguable legal or regulatory authority." Id. Thus, when evaluating a taking case as a "physical taking," "the dominant characteristic is not the absence of legal or regulatory authority but the fact that [the] government appropriated the property to [its] use." Id.

Plaintiffs allege that defendant permanently prevented access to their patented mining lands. See Complaints (Compls.) ¶ 3, 6-7. According to the parties' briefing, the public lands surrounding plaintiffs' alleged property interests were closed by BLM in 1989. Def.'s Mot. 3; Pls.' Opp. 8. The published notices stated that the public lands adjacent to the bombing ranges of Naval Air Station Fallon were "closed to the public until further notice" as a public safety precaution. Def.'s Mot. 3 (citing 54 Fed. Reg. 51,326 (quotation omitted)).

It is well-settled that a closure in which defendant physically bars access to lands comprises a physical taking. As the Court of Claims stated in Armijo v. United States, 229 Ct. Cl. 34 (1981), "the actual cutting off of access" represents one of "two well-recognized situations where the government will be held to take without any formal expropriation or physical invasion." Id. at 37; see also Laney v. United States, 228 Ct. Cl. 519 (1981) (stating that government's blocking access to an island is a taking); Drakes Bay Land Co. v. United States, 191 Ct. Cl. 389 (1970) (holding that government's acquisition of land across the only feasible access route to private property is a taking); Bydlon v. United States, 146 Ct. Cl. 764 (1959) (declaring that Forest Service's decision

5

to cut off all access to a permit site that was required to operate a public resort is a taking).[4]

### 4. Plaintiffs' Claims Are For Permanent Physical Takings Beginning in 1989

Plaintiffs assert that BLM's closing of plaintiffs' property in 1989 comprised, "at the most, a temporary taking." Pls.' Opp. 6. Plaintiffs argue that the 1989 closure was "emergency and temporary," id., and, therefore, did not trigger the running of the statute of limitations. Rather, plaintiffs assert that the statute did not begin to run until "[t]he emergency and temporary interference with access" ended, which plaintiffs claim occurred with the enactment of the MLWA on November 6, 1999.[5] Id. Thus, plaintiffs argue that they filed their complaints timely because they did so within six years after the date of the MLWA's enactment. Id. The court disagrees.

As this court noted in Kemp, "Whether a physical taking is permanent or temporary is irrelevant to the application of the statute of limitations because the accrual date is the same for both." 65 Fed. Cl. at 822 (citing Caldwell v. United States, 391 F.3d 1226, 1234-35 (Fed. Cir. 2004)). In Kemp, plaintiff claimed that the National Park Service had allowed the public to use her land without her permission, resulting in a taking. 65 Fed. Cl. at 819. Defendant moved to dismiss the complaint pursuant to RCFC 12(b)(1), arguing that the court lacked jurisdiction to hear the claim because it was time-barred. Id. Plaintiff argued that the "statute of limitations on her claims beg[an] to run only when the temporary taking ha[d] ended." Id. at 822. This court disagreed, holding that the statute of limitations began to run when the government came into physical possession of plaintiff's property. Id. at 826.

The Court of Appeals for the Federal Circuit arrived at a similar conclusion in Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004). In Caldwell, plaintiffs sought compensation for an alleged taking by the government under the National Trail Systems Act. 391 F.3d at 1232. Defendant moved for dismissal under RCFC 12(b)(1), claiming that plaintiffs' complaint was barred by the statute of limitations. Id. Defendant argued that the statute of limitations began to run when the government first took physical possession of plaintiffs' lands. Id. Plaintiffs, on the other hand, believed that the statute of limitations began to run when the deed was transferred by the railway company to the

---

[4]The other of the two "well-recognized situations" is that in which "the government regulation is practically so burdensome and pervasive that the landowner is denied all use of his land." Armijo v. United States, 229 Ct. Cl. 32, 37 (1981) (citations omitted).

[5]The correct date of the enactment of the statute is October 5, 1999. Pub. L. No. 106-65 §§ 3011-3018, 113 Stat. 512 (Oct. 5, 1999). Defendant relies upon the correct date in its briefing. See Def.'s Mot. 2; Def.'s Reply 2.

city. Id. The Federal Circuit adopted defendant's argument, stating that "a taking occurs when the owner is deprived of use of the property." Id. at 1235. That rationale is equally applicable to this case.

Plaintiffs argue that the closing by BLM of access to their lands caused a temporary taking because "the closure [wa]s of indefinite duration." Pls.' Opp. 12. Plaintiffs point to the Federal Register notices from December and February and to a letter from the Navy to Senator Harry Reid of Nevada as evidence of non-permanency because each document stated that the lands were "closed to the public until further notice." Id. at 12-13 (emphasis added). Plaintiff cites United States v. Dickinson, 331 U.S. 745 (1947) as support for its claim that "[a] taking does not accrue if the extent or duration of the taking is unknown." Pls.' Opp. 16.

Plaintiffs' reliance on Dickinson is misplaced. The Supreme Court held in that case that "a taking by a continuous process of physical events" does not accrue until the "situation becomes stabilized." Dickinson, 331 U.S. at 749. Dickinson concerned a governmentally-constructed dam that flooded and eroded the plaintiff's land over time, such that plaintiffs were unsure of the frequency of inundation and whether a permanent taking had in fact occurred. Id. In such circumstances, the Court found that, if a plaintiff is required to bring a suit within six years of the commencement of the taking, when damages are still compounding and uncertain, the plaintiff would risk inaccurate damages and "res judicata against recovering later for damage as yet uncertain." Id. However, Dickinson does not stand for the proposition that uncertainty of any kind will bar accrual of a claim. Rather, in Dow, the Supreme Court interpreted Dickinson as having a limited holding applying only to flooding. See United States v. Dow, 357 U.S. 17, 27 (1958) ("The expressly limited holding in [Dickinson] was that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated to public use."). The Court of Appeals for the Federal Circuit recently noted the holding of Dickinson, stating that "extending the Dickinson stabilization doctrine outside the realm of gradual physical processes caused by government action, such as flooding or plant overgrowth, into the area of direct government entry onto property" is an error. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1360 (Fed. Cir. 2006) (John R. Sand).

Unlike the plaintiff in Dickinson, the plaintiffs in this case were able to gauge their harm from defendant's taking as soon as BLM closed off access to their lands. As the plaintiffs themselves assert in their briefing, "Limitations do not run until the plaintiff knows or has reason to know both that his land has been taken and the extent of the taking." Pls.' Opp. 16 (citing Braude v. United States, 218 Ct. Cl. 270 (1978)). For plaintiffs in this case, that time arrived in 1989 when BLM closed off access to their lands. Whereas Dickinson dealt with a "gradual physical process," the current case

concerns "a single government action." Def.'s Reply 10 (citations omitted). Denial of access to their asserted mining claims forms the basis for plaintiffs' takings claims. See Compls. ¶¶ 7-8.

Nor is there any uncertainty about whether plaintiffs were provided notice of the taking of their property. When BLM denied access to plaintiffs' lands in 1989, plaintiffs were given constructive and actual notice by publication in the Federal Register in December 1989 and February 1991. See 54 Fed. Reg. 51,326 (Dec. 14, 1989); 56 Fed. Reg. 4,074 (Feb. 1, 1991). See also Lyng v. Payne, 476 U.S. 926, 942-43 (1986) (quoting 44 U.S.C. § 1507) (stating that "[p]ublication in the Federal Register 'is sufficient to give notice'"); Pam, S.p.A. v. United States, 2006 U.S. App. LEXIS 23284, at *11 (Fed. Cir. Sept. 13, 2006) (holding that plaintiff "received constructive and actual notice . . . by publication in the Federal Register"). These published notices provided detailed descriptions of the lands affected by the closure and explicitly "included public lands surrounding all of the patented lands at issue, except the patented land over which Ross asserts ownership." Def.'s Reply 3 (citations omitted). According to a letter sent by the Secretary of the Navy to Senator Reid dated December 29, 1989, warning signs regarding the closure were erected around the premises. Id. at 4. By October 16, 1991, the Navy had completed posting 800 warning signs stating "AREA CLOSED - The public lands behind this sign are closed for public safety - NO TRESPASSING." Def.'s Reply 4; Def.'s Mot. 4. The court does not agree with plaintiffs that their claims were justifiably uncertain until 1999. Plaintiffs were denied access in 1989 and given notice of the closure through both the Federal Register and posted signs. These facts concerning notice do not appear to be in dispute. See Pls.' Opp. passim.

In John R. Sand, the Court of Appeals for the Federal Circuit held that plaintiffs' claims were time-barred because they filed the claims more than six years after the time of the government's taking. 457 F.3d at 1346. John R. Sand concerned a privately owned sand and gravel leasehold around which the government erected a chain link fence. Id. at 1347-48. Although the trial court found that the alleged taking in 1992 was not permanent because plaintiff was allowed access to the property after protesting the construction of the fence and plaintiff continued to mine sand and gravel on the property, id. at 1350, the Federal Circuit reversed, finding that "the claim accrued not later than February of 1994 when the government constructed the fence that cut off [John R. Sand's] access to its plant area," id. at 1356. In reaching that decision, the court stressed that "[i]n the context of physical takings 'permanent does not mean forever, or anything like it.'" Id. at 1357 (quoting Hendler v. United States, 952 F.2d 1364, 1376 (1991)). Rather, the court stated that "[a] government occupation is 'permanent' when the government's 'intrusion is a substantial physical occupancy of private property.'" Id. (quoting Hendler, 952 F.2d at 1377).

The analysis by the Federal Circuit in John R. Sand supports the court's conclusion here. In John R. Sand, the Federal Circuit found that a permanent taking had occurred as soon as the government erected a fence around the plaintiff's property. 457 F.3d at 1357. The court made its determination despite the fact that plaintiff still had access to the land and was able to continue mining it. Id. at 1347. By comparison, plaintiffs in this case were entirely denied access to their mining claims when BLM closed off access in 1989. The plaintiffs in this case had no ability whatsoever to gain access to any part of the land, nor were they able to mine the land. Thus, the permanency of the taking is clearer in this case than it was in John R. Sand. The Federal Circuit's holding in John R. Sand requires, the court believes, a finding that BLM's denial of access to plaintiffs' mining claims was a permanent taking.

Plaintiffs also cite Nitol v. United States, 7 Cl. Ct. 405 (1985) to support their claim that the statute of limitations does not begin to run until the taking is of a definite duration. However, like Dickinson, Nitol is readily distinguishable from this case. Nitol concerned the possible contaminating effects of a governmental nuclear testing program. 7 Cl. Ct. at 412. The uncertainty surrounding the possibility of contamination was such that the court was required first to decide "whether in fact there has been any taking." Id. at 412-13. In contrast, there is no question here regarding the government's taking of the plaintiffs' alleged interests in the patented mining claims: the parties do not dispute that the government effected a taking in 1989 when BLM denied access to plaintiffs' lands. See Def.'s Mot. 3; Pls.' Opp. 6. The argument that plaintiffs present is that the 1989 closure was only a temporary taking, not that the action was not a taking at all. Pls.' Opp. 6. Therefore, this case is not governed by Nitol because BLM's actions are conceded to have effected a taking.

Plaintiffs also rely on Amyx v. United States, 228 Ct. Cl. 876 (1981) for additional support for their argument that the statute of limitations did not begin to run until after enactment of the MLWA. Reciting the language of the Amyx opinion, plaintiffs argue in their briefing that, "'the sources of the problem may be continuous in nature, and it would not be in the interests of justice to require piecemeal suits.'" Pls.' Opp. 17 (quoting Amyx, 228 Ct. Cl. at 878). However, the language on which plaintiffs rely, see Pls.' Opp. 17, was provided by the Amyx court as a summary of the position of the plaintiffs in that case, not a declaration of law by the court. The Amyx decision does not stand for the proposition that plaintiff offers. In Amyx, just as in Dickinson, the court was addressing a possible taking by flooding, a type of taking for which the courts have developed a unique set of accrual rules. See Dickinson, 331 U.S. at 749. Here, the source and initial date of the taking is not disputed by the parties.

In an effort to bring their case within the ruling of Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994), that a taking does not accrue while landowners are

9

"justifiably uncertain" about the scope of the taking, id. at 1583, plaintiffs present as evidence a letter dated December 10, 2001 from the Navy to each plaintiff that indicated that the Navy would appraise each claim and offer compensation. Pls.' Opp. 6, 14. A basic difficulty with plaintiff's reliance on Applegate is that the letters that plaintiffs point to as evidence of uncertainty concern alleged conversations with defendant's agents, see Pls.' Opp. 14-15, that took place more than two years after the effective date of the MLWA, the date on which plaintiffs themselves argue that the statute of limitations began to run. The letters could not possibly serve to create a "justifiable uncertainty" after a concrete, and conceded, accrual date. Nor are the facts of Applegate analogous to the facts in this case. In Applegate, plaintiffs claimed a taking of beachfront property. 25 F.3d at 1580. The government planned to construct a sand transfer plan to mitigate the effects of its harbor project. Id. at 1582. The court held that the government's promises to build the plant and "restore the littoral flow destroyed the predictability of the extent of damage to the land." Id. at 1583. In this case, plaintiffs did not experience a gradual taking; rather, the taking occurred in a single act when BLM denied them access to their patented mining claims.

Plaintiffs also cite Oro Fino Consolidated Mines, Inc. v. United States, 118 Ct. Cl. 18 (1950) (Oro Fino), to support its position. Plaintiffs state that Oro Fino, which arose after "the government had imposed an order closing the operation of a gold mine," Pls.' Opp. 17, held that "'it would be unfair if the statute had started running against plaintiff at a time when there was no way of knowing the duration of the interest taken,'" Pls.' Opp. 18 (quoting Oro Fino, 118 Ct. Cl. at 22). The court in that case determined that closing the gold mine for three years during World War II did not comprise a taking, but rather a valid and permissible regulation under the government's police and war powers. Oro Fino, 118 Ct. Cl. at 30.

This case is not one arising out of wartime emergency. See Achenbach v. United States, 56 Fed. Cl. 776, 779-80 (2003), aff'd 112 Fed. Appx. 53 (2004) (holding that takings claims against the government for preventing American citizens living in the Philippines from traveling to the United States during World War II were time-barred because plaintiffs were aware of the harm at the time that it occurred); Franco-Italian Packing, Co. v. United States, 130 Ct. Cl. 736 (1955) (holding that plaintiff did not have a takings claim because the government's seizure of plaintiff's fishing boats were not appropriated for public use). Whereas such cases concern temporary takings during wartime, this case involves a permanent taking by the government for public health and safety reasons.

The government's alleged taking in this case much more strongly resembles the taking that occurred in John R. Sand. Just like the plaintiff in John R. Sand, the parties in this case were not aware of how long they would be denied access to their patented

10

mining claims when access was initially closed off. See 457 F.3d at 1353; Pls.' Opp. 12. The reasons for the closures in both cases are also related: the government effected a taking in each case because of public health and safety concerns. See 457 F.3d at 1347-48; Def.'s Mot. 3. Additionally, the plaintiffs in each case argued that the government's initial exclusion was not permanent until enactment of an administrative order or legislative act. In John R. Sand, the plaintiff had argued that the statute did not begin to run until the Environmental Protection Agency (EPA) issued an order that defined the scope of the closure and barred plaintiff from entry. 457 F.3d at 1349-50. In this case, plaintiffs argue that the statute of limitations did not begin to run until after enactment of the MLWA. Pls.' Opp. 6.

The Court of Appeals for the Federal Circuit in John R. Sand held that the statute of limitations began to run when the government constructed fences to bar access in 1994. 457 F.3d at 1357. The court believes that the analogous date in this case is 1989, the date when BLM first denied plaintiffs access to their mining claims. An exclusion by the government is not temporary simply because it is augmented or reinforced by a statute. In this case, plaintiffs were completely barred from access to their patented mining lands by BLM in 1989. Def.'s Mot. 3. That denial of access was more severe than the taking in John R. Sand because the plaintiff in that case was still given some entry to his property. See John R. Sand, 457 F.3d at 1347. Because the John R. Sand court found a permanent taking in circumstances where plaintiff was given some access to his property, the court believes that a permanent taking must have occurred where no such access is granted.

     5.     The Doctrine of Equitable Tolling Does Not Apply

Plaintiffs claim that, under the facts of their case, equitable tolling is available to prevent the statute of limitations from barring their claims. Pls.' Opp. 19. The doctrine of equitable tolling "is a narrow doctrine" that enables courts to toll the statute of limitations for compelling justifications. Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003). Such justifications exist "when a claimant has (1) actively pursued his judicial remedies, but filed a defective pleading during the statutory period, (2) was induced or tricked by an adversaries' misconduct into allowing the filing date to expire, or (3) missed the filing date due to the government's concealment of the facts." Barney v. United States, 57 Fed. Cl. 76, 87 (2003) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). However, equitable tolling is not granted in circumstances where "a plaintiff discovers the existence, or could have discovered the existence, of a cause of action." Barney, 57 Fed. Cl. at 88 (citing Hopland Band of Pomo Indians, 855 F.2d at 1577). "[M]ere excusable neglect is not enough to establish a basis for equitable tolling." Martinez, 333 F.3d at 1318.

11

Plaintiffs assert that the "Navy made numerous representations that it would provide just compensation to the plaintiffs," Pls.' Opp. 25. However, plaintiffs point only to alleged phone calls by one plaintiff, George Duffy, id. at 14-15, to "Beverly Freitas, who was represented to be a member of the real estate team of J.L. Betancourt, U.S. Navy," id. at 14, and Antoinette Perez [no title given], both of whom allegedly "advised that there was no statute of limitations running on his claim," id. Defendant presents declarations by Freitas and Perez that Freitas never spoke to Mr. Duffy about the statute of limitations and that Perez never spoke to him at all during her service and employment with the Navy. Def.'s Reply 15; see also Exhibit B to Def.'s Reply (Declaration of Beverly Freitas) ¶ 2; Exhibit C to Def.'s Reply (Declaration of Antoinette Perez) ¶¶ 2, 4.

Plaintiffs allege telephone calls by one plaintiff, Mr. Duffy, to two persons alleged to be representatives of defendant. Both of the representatives contradict, under oath, Mr. Duffy's account. Other than the allegations about Mr. Duffy's telephone calls, plaintiffs do not allege any specific acts by defendant that plaintiffs claim would warrant equitable tolling, see Pls.' Opp. 14-15, 25, such as fraud or other misconduct. Even assuming that plaintiffs' representations regarding the information provided to Mr. Duffy were accurate, plaintiffs still do not assert that the information he received in the telephone calls caused him to delay his filing of his claim. See id. at 14-15. Plaintiffs have simply failed to present evidence sufficient to support a finding of equitable tolling in this case.

6.   Ms. Ross's Claim Is Time-Barred

Unlike the other plaintiffs in this case, Ms. Ross does not assert ownership of a patented mining claim that BLM closed off in 1989.[6] Rather, she alleges that passage of the MLWA took away "all reasonable access to her patented mining claim." Pls.' Opp. 7. Defendant counters by stating that Ms. Ross's claim is time-barred because it was filed more than six years after the MLWA's enactment. Def.'s Mot.2; Def.'s Reply 2. Defendant points out that the MLWA became effective on October 5, 1999 and that Ms. Ross filed her complaint on October 12, 2005, Def.'s Mot. 2; Def.'s Reply 2, six years and one week after the accrual date of her claim.

---

[6] Ms. Ross claims ownership over "a patented mining claim located in the Fairfield Mining District, Churchill County, Nevada and commonly referred to as Argel No. 2, Survey No. 4184, Assessor's Parcel Number 000-034-99." Ross Compl. ¶ 5. Plaintiffs state that Ms. Ross is the lawful owner of that land because she is "the surviving joint tenant pursuant to the death certificate of her joint tenant." Pls.' Opp. 25. Defendants assert that Ross did not own the patented lands over which she claims ownership in 1989. Def.'s Reply 16 (citations omitted). For the purposes of this analysis, the court assumes, without deciding, that Ms. Ross is the legal owner of her asserted mining claim.

Section 2501 of Title 28 of the United States Code bars the Court of Federal Claims from exercising jurisdiction over matters that are filed with the court more than six years after the date of accrual of the claim. 28 U.S.C. § 2501. When interpreting the statute of limitations, the court "is bound by 'sovereign immunity' principles of statutory construction." O'Connell v. Sec'y of HHS, 63 Fed. Cl. 49, 57 (2004) (citing Stone Container Corp. v. United States, 229 F.3d 1345, 1352 (Fed. Cir. 2000) (Stone Container). As the Federal Circuit stated in Stone Container, the "statute of limitations is a condition of sovereign immunity by the United States . . . [so courts] must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended." 229 F.3d at 1352 (quoting Block v. N. Dakota, 461 U.S. 273, 287 (1983) (internal quotation marks omitted).

To review, the MLWA was enacted on October 5, 1999. Pub. L. No. 106-65 §§ 3011-3018, 113 Stat. 512 (Oct. 5, 1999). Ms. Ross did not file a complaint until October 12, 2005. See Ross Compl. 1. Ms. Ross does not give any reasons or present any evidence as to why she did not file a claim within six years after the accrual of her claim. See Pls.' Opp. 7. Based on the undisputed facts before the court, Ms. Ross's claim is time-barred due to her failure to file a complaint until after the statute of limitations had run.

III. Conclusion

The court lacks jurisdiction to hear plaintiffs' actions because the claims are time-barred by the statute of limitations set forth by 28 U.S.C. § 2501. Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to DISMISS the complaints in case no. 05-367 L, into which have been consolidated nos. 05-484 L, 05-537 L, 05-1082 L, 05-1083 L, 05-1173 L, and 05-1175 L. No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt<br>
EMILY C. HEWITT<br>
Judge